IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MADELINE KRASNO,

     Plaintiff,

v.                         Case No. 21-CV-00099-SLC

BOARD OF REGENTS OF THE UNIVERSITY
OF WISCONSIN, et al.,

     Defendants.

## PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF FACT

Plaintiff Madeline Krasno, by her attorneys at Animal Legal Defense Fund and Laffey, Leitner & Goode LLC, replies to Defendants' Response to Plaintiff's Proposed Findings of Fact as follows:

1. *Defendant Rebecca Blank is Chancellor for the University of Wisconsin-Madison ("the University"). (Dkt. 17, First Amended Compl. ¶ 11, p. 4; Dkt. 19, Answer to FAC ¶ 11, p. 4).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

## FACEBOOK AND INSTAGRAM

2. ***Comments****. A Facebook account may opt to exclude all comments from its posts. To do so, a Facebook account can select to only allow specifically designated Facebook users or pages to comment on individual posts and then decline to identify any such users. This effectively blocks all commenters from responding to the University or otherwise commenting within the commenting section of the Facebook account's posts. See How do I adjust who can comment on my public posts on Facebook?, Facebook Help Center, https://perma.cc/FC9S-4FHV.*

Defendants' Response: **Dispute, in part.** The evidence cited does not support the proposed finding in full context. While this comment setting (which allows an admin to select only

specifically designated Facebook users or pages to comment on individual posts) has been available as of May 17, 2022, (the date of the screenshot/perma.cc link), this functionality has not always been in place. Facebook added this comment setting option in late March of 2021. Prior to the launch of this comment setting option, Facebook allowed admins to turn off comments on videos, but not on typical link, photo, or plaintext posts. See., e.g., We Are Social Media, You Can Now Control Who Comments On Your Facebook Posts (wersm.com) (last visited June 8, 2022).

Plaintiff's Reply: **No dispute.** Plaintiff does not dispute Defendants' description of the context surrounding the proposed fact, but immaterial. Defendants' cited evidence does not contradict the proposed finding of fact. The Court should deem this proposed finding undisputed.

### @Uwmadison Instagram Account

3. *The University does not take any steps to limit access to its Instagram account. (Dkt. 28, University Dep., March 15, 2022, p. 26).*

Defendants' Response: **Disputed, in part.** The University does not limit the persons who may comment on its Instagram page, but it limits the subject matter of the comment section of its Instagram page. (Dkt. 28 (Moll Corp. Desig. Dep. 41:12–20, 42:2–6, March 15, 2022); (Dkt. 37 (Kilpatrick Decl. ¶ 3, Ex. A. ¶ 4, Ex. B)); 25 (Lucas Depo. 132:12–15, March 11, 2022).)

Plaintiff's Reply: **No genuine dispute.** The Court should deem this proposed finding undisputed.  Objection to the legal conclusion that the University has created a limited or nonpublic forum within the social media pages' comment threads. The cited evidentiary materials also do not demonstrate any conflict with the proposed fact. The referenced deposition testimony in the response relates solely to the University's Social Media Guidance, which states that content by users is not regularly reviewed and that certain content, including off-topic content, *may* be subject to removal. *See* (Dkt. 38-1, Foley Decl., filed May 18, 2022, ¶ 2, p. 1, Exh. 1); *see also* (Dkt. 26, Nate Moll ("Moll") Dep., March 9, 2022, pp. 59-60). It does not support Defendants' response that subject matter is in any way "limit[ed]." The University has no stated policy that comments are required to relate to underlying posts. *See*

(Dkt. 26, Moll Dep., March 9, 2022, p. 48); (Dkt. 28, University Dep., March 15, 2022, p. 112) ("The University does not have any policies regarding social media."). The University's social media pages contain no directive that comments must be on topic to the University's posts, and only provide links for a user to access a separate website containing its Social Media Statement. *See* (Dkt. 28, University Dep., March 15, 2022, pp. 55-59). The University does not consistently remove comments that do not relate to its posts. The comment threads contain numerous examples of off topic content visible and unmoderated by the University. *See, e.g.,* (Dkt. 38-23, Foley Decl., filed May 18, 2022, ¶ 24, p. 4, Exh. 23) (comment by user "Hani Hosain"); (Dkt. 38- 12, Foley Decl., filed May 18, 2022, ¶ 13, p. 3, Exh. 12) (comments by users "sarah.cheney" and "jatzyy"); (Dkt. 38-34, Foley Decl., filed May 18, 2022, ¶ 35, p. 6, Exh. 34) (comment by user "lili_varela"); (Dkt. 38-27, Foley Decl., filed May 18, 2022, ¶ 28, p. 5., Exh. 27) (comment by user "rollietimothy"); (Dkt. 38-29, Foley Decl., filed May 18, 2022, ¶ 30, p. 5, Exh. 29) (comments by users "mikkelbodzioch" and "jada.beacom"); (*Id*. at 21) (comment by user "iamelsam").

4. *Through the @uwmadison account, members of the public who have a generally available Instagram account can directly communicate with the University and each other in the comment threads associated with each of the University's posts, exchanging views and discussing topics with one another, and receiving official information from the University. (Dkt. 17, First Amended Compl. ¶ 55, p. 17; Dkt. 19, Answer to FAC ¶ 55, p. 10).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

**@uwmadison Facebook Account**

5. *The University does not take any steps to limit access to its Facebook page. (Dkt. 28, University Dep., March 15, 2022, p. 28).*

Defendants' Response: **Disputed, in part.** The University does not limit the persons who may comment on its Facebook page, but it limits the subject matter of the comment section

3

of its Facebook page. (Dkt. 28 (Moll Corp. Desig. Dep. 41:12-20, 42:2–6, March 15, 2022); (Kilpatrick Decl. ¶ 3, Ex. A. ¶ 4, Ex. B); 25 (Lucas Depo. 132:12–15).)

Plaintiff's Reply: **No genuine dispute.** The Court should deem this proposed finding undisputed.  Objection to the legal conclusion that the University has created a limited or nonpublic forum within its Facebook page's comment threads. The cited evidence also does not support Defendant's response that the subject matter of the comment section of its Facebook page is "limit[ed]." The referenced deposition testimony in the response relates solely to the University's Social Media Guidance, which states that content by users is not regularly reviewed and that certain content, including off-topic content, *may* be subject to removal. *See* (Dkt. 38-1, Foley Decl., filed May 18, 2022, ¶ 2, p. 1, Exh. 1); *see also* (Dkt. 26, Moll Dep., March 9, 2022, pp. 59-60). The University does not otherwise limit the subject matter of its Facebook page's comment threads. *See* (Plaintiff's Reply to PPFOF ¶ 3, *supra*).

## THE UNIVERSITY'S SOCIAL MEDIA MODERATION PRACTICES

6. *The University has no social media policy that governs how social media staff moderate comments. (Dkt. 26, Moll Dep., March 9, 2022, p. 48); (Dkt. 28, University Dep., March 15, 2022, p. 112) ("The University does not have any policies regarding social media.").*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

7. *Instead, the University offers a Social Media Statement that has been operative since 2010 and which had provided the only relevant guidance for moderating users' comments on the University's social media accounts at the time this lawsuit was filed. (Foley Decl. ¶ 2, p. 1, Exh. 1); (Dkt. 28, University Dep., March 15, 2022, pp. 37-39).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

8. *The Social Media Statement is posted on the University's website at https://www.wisc.edu/social-media-statement/. (Foley Decl. ¶ 55, p. 9, Exh. 54, University Response to Int. No. 4); see also .*

4

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

9.  *Neither the Social Media Statement itself nor the content that is subject to removal by the University under the Social Media Statement is posted on the University's Instagram account or Facebook Page. Rather, users must navigate through several links on either site to access it. (Dkt. 28, University Dep., March 15, 2022, pp. 55-56).*

Defendants' Response: **Dispute**. The evidence cited shows that the Social Media Statement is posted as a link or via a chain of links. Regardless, no dispute that users must proceed through links on both the University's Instagram and Facebook pages to access the Social Media Statement.

Plaintiff's Reply: **No dispute.** Plaintiff does not dispute Defendants' description of the context surrounding the proposed fact, but immaterial. Defendants' cited evidence does not contradict the proposed finding of fact. The Court should deem this proposed finding undisputed.

10. *To navigate to the Social Media Guidance for Instagram, an Instagram user must click on a link under the account bio titled "linktr.ee/UWMadison." (Dkt. 28, University Dep., March 15, 2022, pp. 55-57). A screen shot of where the linktr.ee can be accessed is attached here as Exhibit 2. (Foley Decl. ¶ 3, p. 1). The user is brought to a landing page and must then scroll two-thirds of the way down the list to navigate to another link titled "Social Media Statement," which brings them to the University's Social Media Statement. (Dkt. 28, University Dep., March 15, 2022, pp. 57-58); (Foley Decl. ¶ 4, p. 1, Exh. 3).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

11. *To navigate to the Social Media Guidance for Facebook, a Facebook user must navigate to the "About" section on the lefthand side of the University's Facebook Page and select "Privacy Policy." This brings them to the University's Social Media Statement. (Dkt. 28, University Dep., March 15, 2022, pp. 58-59). A screen shot of where the Privacy Policy link can be accessed is attached here as Exhibit 4. (Foley Decl. ¶ 5, p. 2).*

Defendants' Response: **Dispute**. Undersigned counsel performed the navigation and the words "Privacy and Legal Info" appear rather than "Privacy Policy."

Plaintiff's Reply: **No genuine dispute.** The Court should treat the proposed fact as undisputed. The proposition is adequately supported by the cited evidence, as the words "Privacy Policy" appeared as of May 18, 2022, as shown in Exhibit 4. *See* (Dkt. 38-4, p. 2). Further, Defendants provide no evidence to support their dispute.

12. *The Social Media Statement states that while "UW-Madison does not regularly review content posted to social media sites," it reserves "the right to remove any content for any reason," including content which is "threatening," "profane," "off-topic," promoting "organizations or programs not related to or affiliated with the university," or that are "injurious or illegal." (Foley Decl. ¶ 2, p. 1, Exh. 1).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

13. *The Social Media Guidance does not provide a definition of "off-topic." (Dkt. 28, University Dep., March 15, 2022, p. 42).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

14. *The criteria of topics subject to removal under the Social Media Statement is not all-inclusive, and comments have been removed or hidden for other reasons not articulated in the Social Media Statement. (Dkt. 26, Moll Dep., March 9, 2022, p. 61).*

Defendants' Response: **Dispute.** Evidence cited does not support the proposed finding. The deposition transcript shows that Moll testified that "it is possible" that comments were removed or hidden on a ground outside the criteria in the Social Media Statement. (Dkt. 26 (Moll Dep. 61:7–16, March 9, 2022).)

Plaintiff's Reply: **No genuine dispute.** The Court should deem this proposed finding undisputed. Defendant Moll testified he removes comments for reasons not articulated in the Social Media Statement. For instance, he does not allow any conversations about specific candidates for office, content that would be classified as "political," which is not a basis for removal under the Social Media Statement. *See* (Dkt. 26, Moll Dep., March 9, 2022, pp. 60-61).

15. *The Social Media Statement does not provide that comments deemed "political" are subject to removal from the University's Instagram or Facebook accounts. But Defendant Moll draws a strict line to not allow or host any conversations about specific candidates for office. (Dkt. 26, Moll Dep., March 9, 2022, p. 161).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

16. *Similarly, Defendant Moll moderates comments whose content he believes is "harmful" and does so by fitting the comment into one or more of the categories listed in the Social Media Statement "based on the content of the . . . comment in question." (Dkt. 26, Moll Dep., March 9, 2022, pp. 162-163).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

17. *Defendant Moll also removes comments as "spam," a term not found in the University's Social Media Statement or Interim Guidance described below, though he believes it is. Defendant Moll applies his own definition of spam based on his experience, which he describes as part of a "wave of comments that are typically encouraged or . . . directed by . . . a campaign or a viral news story or any . . . media that's trying to . . . encourage others to go and . . . comment." (Dkt. 26, Moll Dep., March 9, 2022, pp. 166-167). Defendant Lucas has no definition of spam but thinks "we evaluate on a . . . case-by-case basis and try to apply our best judgment" in determining whether spam occurred. (Dkt. 25, Lucas Dep., March 11, 2022, pp. 73-74).*

Defendants' Response:  **No dispute.**

Plaintiff's Reply: **No dispute.**

18. *Following the filing of this lawsuit, on May 6, 2021, the University issued Interim Guidance to social media staff on the moderation of off-topic comments. (Dkt. 28, University Dep., March 15, 2022, pp. 44-45); (Foley Decl. ¶ 6, p. 2, Exh. 5). The Interim Guidance is not publicly available. (Foley Decl. ¶ 55, p. 9, Exh. 54, University Response to Int. No. 4); (Dkt. 26, Moll Dep., March 9, 2022, pp. 44, 49-50).*

Defendants' Response: **No dispute as to the first sentence**. As to the **second sentence, disputed.** Plaintiff's evidence shows that the Interim Guidance is not "publicly posted," which is not the same as not "publicly available." The University is subject to the Wisconsin Public Records Law, Wis. Stat. §§ 19.31–.39, and the Interim Guidance would most likely be considered a "record" subject to disclosure.

Plaintiff's Reply: **No genuine dispute.** The Court should deem this proposed finding undisputed. The fact as written is adequately supported by the evidence cited, which states the Interim Social Media Guidance is "not publicly posted." *See* (Dkt. 38-54, Foley Decl., filed May 18, 2022, ¶ 55, p. 9, Exh. 54, University Response to Int. No. 4).

19. *The Interim Guidance itself disclaims the ability to moderate comments based on viewpoint. However, it offers optional moderation for comments deemed "off topic" to a social media page. As an example of when moderation would be acceptable for being off-topic to a page, the Interim Guidance provides, "the social media manager of a page dedicated to UW-Madison's animal research programs . . . may not hide a post that states, 'Taylor Swift agrees that all universities should stop torturing animals by using them for research.'" It advises the comment may not be removed as off topic since it "expresses a viewpoint on the topic the page is dedicated to. Because the post is related to the topic of the page, it cannot be" removed. (Foley Decl. ¶ 6, p. 2, Exh. 5).*

Defendants' Response: As to **first sentence, No dispute.** As to **second sentence, dispute**. The evidence cited does not support the proposed finding and it therefore should be disregarded by the Court. The first sentence of the second paragraph of the Interim Guidance reads: "Thus, consistent with the restrictions imposed on public entities by the First Amendment, social media managers may remove posts that are unrelated to the topic or purpose of the page." (Foley Decl. ¶ 6, Ex. 5.) The first sentence of the third paragraph reads: "If a social media manager is unsure whether a specific post is on or off topic, as a general rule of thumb he or she should leave the post visible and contact . . . OLA for further discussion." (Foley Decl. ¶ 6, Ex. 5.) So, social media mangers have authority to remove posts that are off-topic but may leave them visible pending consultation with the University's Office of Legal Affairs. As to **third sentence, No dispute.** As to **fourth sentence, No dispute.**

Plaintiff's Reply: **No genuine dispute.** The Court should deem this proposed finding undisputed. The fact as written is adequately supported by the evidence cited. The Interim Guidance does not require removal of any comments, even if found to be "off topic." *See* (Dkt. 26, Moll Dep., March 9, 2022, pp. 52, 57-60, 148); (Dkt. 28, University Dep., March 15, 2022, p. 54). The University further testified "the University does not have a policy that every comment must be acted upon." (Dkt. 28, University Dep., March 15, 2022, p. 70). The

evidentiary materials cited by Defendants do not sufficiently dispute this proposed fact, and

Defendants' interpretation of the evidence is not supported by evidentiary materials.

20. *Neither the Social Media Statement nor the Interim Guidance require the removal of any comments, even if found to be "off-topic." (Dkt. 26, Moll Dep., March 9, 2022, pp. 52, 57-60, 148); (Dkt. 28, University Dep., March 15, 2022, p. 54).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

21. *Other than the Social Media Statement and the Interim Guidance, the University has no other formal policies regarding social media. (Dkt. 28, University Dep., March 15, 2022, p. 36).*

Defendants' Response: **Dispute.** The evidence cited does not support the proposed finding and it therefore should be disregarded by the Court. The Social Media Statement and Interim Guidance are not formal policies. (Dkt. 25 (Lucas Dep. 49:21–25, March 11, 2022); see also Plaintiff's Proposed Finding of Fact no. 6 and Defendants' Response).

Plaintiff's Reply: **No genuine dispute**. The Court should deem this proposed finding

undisputed. No dispute as to word "formal." The fact as written is adequately supported by the

evidence cited.

### University Moderation under its Guidelines

22. *Prior to the filing of this lawsuit, Defendant Moll purports to have used the Social Media Guidance to determine what types of comments to moderate, including those listed as "off-topic." (Dkt. 26, Moll Dep., March 9, 2022, pp. 44-45). Defendant Moll would determine a comment to be off-topic that generally does not cover the topic of a specific social media post made by the University. (Dkt. 26, Moll Dep., March 9, 2022, p. 49). Defendant Moll looks to "context" as well as comparing the specific content of both the comment and the post in order to make a determination of whether the comment is off-topic. (Dkt. 26, Moll Dep., March 9, 2022, pp. 104, 106-107); (Dkt. 28, University Dep., March 15, 2022, pp. 87-88).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

23. *The Interim Guidance changed how the University moderated comments for being off-topic. (Dkt. 28, University Dep., March 15, 2022, p. 75). The Interim Guidance helped*

*Defendant Moll determine that a comment may be on topic to a post even if it also includes off-topic content. (Dkt. 26, Moll Dep., March 9, 2022, pp. 51-52).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

24. *In determining if a comment is off-topic to the post it is made to, the University looks to the "contents of the comment on a case-by-case basis." (Dkt. 28, University Dep., March 15, 2022, p. 83).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

25. *The University Communications staff must often exercise judgment to determine whether a word, phrase, text, or image should be restricted from an account due to violation of the University's Social Media Guidance. (Foley Decl. ¶ 55, p. 9, Exh. 54, University Response to Int. No. 9).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

26. *Defendant Moll uses his judgment to gauge whether additional research is necessary to determine whether a comment is on-topic or off-topic. (Dkt. 26, Moll Dep., March 9, 2022, p. 123).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

27. *The decision to remove an off-topic comment is made by the social media manager in charge of moderation at that time and depends, among other factors, on whether they have time to review the comments in question. (Dkt. 28, University Dep., March 15, 2022, pp. 54-55); (Dkt. 26, Moll Dep., March 9, 2022, p. 214). The decision is totally up to the individual making the moderation decision. (Dkt. 28, University Dep., March 15, 2022, pp. 54-55); (Dkt. 26, Moll Dep., March 9, 2022, p. 214).*

Defendants' Response: As to the **first sentence, No dispute.** As to the **second sentence, dispute**. The first sentence of the third paragraph of the Interim Social Media Moderation Guidance reads: "If a social media manager is unsure whether a specific post is on or off topic, as a general rule of thumb he or she should leave the post visible and contact . . . OLA for further discussion." (Foley Decl. ¶ 6, Ex. 5). So, social media mangers have

authority to remove posts that are off-topic but may leave them visible pending consultation with the University's Office of Legal Affairs. See also Plaintiff's Proposed Finding of Fact no. 31 directly below.

Plaintiff's Reply: **No genuine dispute.** The Court should deem this proposed finding undisputed. *See* (Plaintiff's Reply to PPFOF ¶ 19, *supra*). The fact as written is adequately supported by the evidence cited.

28. *The type of moderation of comments found to be off-topic by the University depends on the social media platform. Defendant Moll typically manually hides comments he determines are off-topic on Facebook and deletes those comments on Instagram. (Dkt. 26, Moll Dep., March 9, 2022, pp. 55-56).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

29. *The University does not have an expectation that each and every individual comment will be reviewed, so some off-topic comments that violate the Social Media Statement end up remaining visible. (Dkt. 28, University Dep., March 15, 2022, p. 69).*

Defendants' Response: **Dispute, in part.** The evidence cited does not support the second clause of the proposed finding. Rather, the evidence cited reveals that the deponent testified that it is "possible" that some off-topic comments that violated the Social Media Statement could end up being made and never moderated. (Dkt. 28 (University Dep. 14–20, March 15, 2022).)

Plaintiff's Reply: **No genuine dispute.** The Court should deem this proposed finding undisputed. Plaintiff does not dispute the deponent's use of the word "possible," but immaterial. Defendants do not offer evidentiary support to dispute the second clause of the proposed finding. Comments that the University deems "off topic" under its moderation practices remain visible on the University's social media pages. *See, e.g.*, (Dkt. 26, Moll Dep., March 9, 2022, pp. 153-156), (Dkt. 38-11, Foley Decl., filed May 18, 2022, ¶ 12, p. 3, Exh. 11) (comments of Don Shoemaker and Barbara Luebke Merten); (Dkt. 38-6, Foley Decl., filed May 18, 2022, ¶ 7, p. 2, Exh. 6) (comment by user "Deidre Mead" to "[c]ut out all the unnecessary classes and get back to basics for majors"); (Dkt. 38-7, Foley Decl., filed May 18,

2022, ¶ 8, p. 2, Exh. 7) (comment by user "Lucky Dave" that he "[c]ant believe the UW still practices in the dark ages with Coal power and Styrofoam cups. Much better schools out there than these dinosaurs."); (Dkt. 38-8, Foley Decl., filed May 18, 2022, ¶ 9, p. 2, Exh. 8) (comment by "Paul Johnson" that "[y]our new double masking policy goes beyond Ridiculous!").

30. *Defendant Moll purports to try to remove off-topic comments to the best of his ability. (Dkt. 26, Moll Dep., March 9, 2022, p. 59). But review of comments is not contemporaneous with the time the comment is made, so some comments are not reviewed. (Dkt. 26, Moll Dep., March 9, 2022, pp. 111, 116).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

31. *If Defendant Moll cannot determine whether to moderate a comment, his option is to contact the University's legal department. He does this "as needed" on a "case-by-case basis." (Dkt. 26, Moll Dep., March 9, 2022, p. 147).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

32. *The University does not always apply its off-topic criteria consistently. (Dkt. 28, University Dep., March 15, 2022, p. 74).*

Defendants' Response: **Dispute.** The cited evidence does not support the proposed finding in full context. The deponent also testified that the University tries to be consistent but he could not "say that in every instance that it has been consistent." (Dkt. 28 (University Dep. 74:6–11, March 15, 2022).)

Plaintiff's Reply: **No genuine dispute.** The Court should deem this proposed finding undisputed. The proposed finding of fact is supported by Plaintiff's cited testimony. Plaintiff agrees with Defendants' characterization of additional testimony by the deponent, which also supports Plaintiff's proposed finding.

33. *Comments unrelated to the University's posts that do not advocate against animal testing remain visible on its social media accounts. See (Foley Decl. ¶¶ 7-9, p. 2, Exh. 6-8)*

*(comment by user "Deidre Mead" to "[c]ut out all the unnecessary classes and get back to basics for majors") (Foley Decl. ¶ 7, p. 2, Exh. 6); (comment by user "Lucky Dave" that he "[c]ant believe the UW still practices in the dark ages with Coal power and Styrofoam cups. Much better schools out there than these dinosaurs.") (Foley Decl. ¶ 8, p. 2, Exh. 7); (comment by "Paul Johnson" that "[y]our new double masking policy goes beyond Ridiculous!") (Foley Decl. ¶ 9, p. 2, Exh. 8).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

34. *After Ms. Krasno left a comment on the University's Instagram page stating "something innocuous," Defendant Moll could not determine if it was on or off-topic without consulting the University's legal department, but he did not do so. (Dkt. 26, Moll Dep., March 9, 2022, pp. 139-140). Ms. Krasno's comment did not relate to primate testing and remained visible. (Dkt. 26, Moll Dep., March 9, 2022, pp. 141-142).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

35. *Defendant Moll identified multiple comments relating to animal advocacy that were hidden from public view that he deemed on-topic under the social media practices of the University. (Dkt. 26, Moll Dep., March 9, 2022, pp. 125-126, 131-132). For example, the University hid a comment by Facebook user "Suzie Cook" when made to a post announcing a symposium in connection with Martin Luther King Jr. Day. Her comment stated, "Martin Luther King himself also stood for equal rights, everyone's voice to be heard and for a change. Shameful that this university would use this mans name when they have no understanding of equal rights when hundred, thousands of innocent creatures suffer at the hands of these people each & everyday . . . ." (Dkt. 26, Moll Dep., March 9, 2022, pp. 125-126, 131-132); (Foley Decl. ¶ 10, p. 2, Exh. 9) (comment of "Suzie Cook"). Defendant Moll determined her comment on-topic to the post. (Dkt. 26, Moll Dep., March 9, 2022, pp. 125-126).*

Defendants' Response: As to the **first sentence, dispute**. The cited evidence does not support the proposed finding. (Dkt. 26 (Moll Dep. 125-126, 131-132, March 9, 2022).) The transcript pages do not refer to "multiple" comments relating to animal advocacy. As to the **second sentence, No dispute.** As to the **third sentence, No dispute.**

Plaintiff's Reply: **No genuine dispute**. The Court should deem this proposed finding undisputed. The proposed finding of fact is supported by Plaintiff's cited testimony in which the deponent discusses two comments relating to animal advocacy that were moderated despite

relating to the University's posts. Apart from the word "multiple," Defendants do not dispute the underlying facts. Also, Defendants' dispute is immaterial.

36. *The University similarly hid a comment by user "veganstonerprincess" to its Instagram post describing a dog receiving a health check-up by the University's Shelter Medicine Program, noting: "[t]he program provides a needed resource for at-risk animals . . . ." (Dkt. 26, Moll Dep., March 9, 2022, pp. 133-134); (Foley Decl., ¶ 11, p. 2, Exh. 10). The comment read: "Y'all DO NOT care about animals. You literally have some locked up in a cages there and testing on them!! Leave them alone! How would you feel being in a cage," and accompanied by an emoji. (Foley Decl., ¶ 11, p. 2, Exh. 10) (comment of "veganstonerprincess"). The University manually deleted the comment despite it relating to the University's post. (Dkt. 26, Moll Dep., March 9, 2022, pp. 131-132). Defendant Moll did no research to determine if the comment's context made it on-topic before manually deleting it. (Dkt. 26, Moll Dep., March 9, 2022, pp. 133-134).*

Defendants' Response: As to the **first sentence, No dispute.** As to the **second sentence, No dispute.** As to the **third sentence, dispute**. The cited evidence does not support the proposed finding. Only Moll, at the deposition, opined that the comment was on-topic to the post; the University did not consider the comment to relate to the post. (Dkt. 26 (Moll Dep. 132:3–15, March 9, 2022).)

Plaintiff's Reply: **No genuine dispute**. The Court should deem this proposed finding undisputed. The proposed finding of fact is supported by Plaintiff's cited testimony. Defendant Moll is the individual who has primary responsibility for overseeing operations of the social media accounts for UW-Madison, the Instagram and Facebook accounts, (Dkt. 40, JSOF ¶ 16), a role he performs as a paid employee of the University, (*id*. at ¶ 15). Defendants do not express an actual dispute, nor support their assertion with any countervailing evidence when they state that "the University did not consider the comment to relate to the post."

37. *The University has moderated comments related to animal testing on posts that contained other comments deemed off-topic that were not related to animals and remained visible. For example, the University hid a comment by Facebook user "Don Shoemaker" linking to a story covering this lawsuit when made to a post promoting a University start-up, but left a comment by user "Barbara Luebke Merten" asking: "Are you aware that Bascom Hall was shown on Young Sheldon last night? So cool!" (Dkt. 26, Moll Dep., March 9, 2022, pp. 153-156); (Foley Decl., ¶ 12, p. 3, Exh. 11) (comments of Don Shoemaker and Barbara Luebke Merten). Defendant Moll could not give a reason the animal related*

*comment alone was moderated, other than "[i]t just depends on . . . the social media lead at that time, how closely they were monitoring comments . . . ." (Dkt. 26, Moll Dep., March 9, 2022, p. 156).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

38. *The University similarly left visible two comments on an Instagram post issued November 17, 2020, relating to COVID-19 public health guidance during the University's Thanksgiving and winter breaks about "protect[ing] your BIPOC" students—Black, Indigenous, and People of Color. Defendant Moll was unable to say whether the comments were on or off topic since he "didn't know the nature of the complaint" referenced. (Dkt. 26, Moll Dep., March 9, 2022, pp. 108, 113, 117-119). The comments remain visible despite Defendant Moll stating he wouldn't know if they had anything to do with COVID-19. See Exhibit 12 (Foley Decl. ¶ 13, p. 3) (comments by users "sarah.cheney" and "jatzyy"); (Dkt. 26, Moll Dep., March 9, 2022, p. 119). A screen shot of the post with all viewable comments is attached as Exhibit 13. (Foley Decl. ¶ 14, p. 3).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

39. *On the same post, Ms. Krasno's comment urging the University to "close down your primate research labs!" was automatically hidden due to an account level restriction and was not affirmatively unhidden. See Exhibit 12 (Foley Decl. ¶ 13, p. 3); (Dkt. 26, Moll Dep., March 9, 2022, pp. 114-115, 120-121). The comment alone remained hidden despite Defendant Moll testifying that "all three [comments] would be stretches to be considered on topic." (Dkt. 26, Moll Dep., March 9, 2022, p. 120).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

40. *Other comments are moderated by the University but Defendant Moll could not determine if they were on-topic at all. (Dkt. 26, Moll Dep., March 9, 2022, pp. 150-152).*

Defendants' Response: **Dispute.** The evidence cited does not support the proposed finding, as the deposition transcript only references one comment, not "other comments." (Dkt. 26 (Moll Dep.) 150:23–152:8, March 9, 2022).)

Plaintiff's Reply: **No genuine dispute.** The Court should deem this proposed finding

undisputed. Plaintiff agrees the cited testimony references one comment, but Defendants'

dispute is immaterial. Apart from the word "comments," Defendants do not dispute the underlying facts that a comment was moderated by the University, and Defendant Moll could not determine if posted comments were on topic.

41. *In addition to individual comment moderation, the University has restricted other Instagram users' accounts for making what it deemed was off-topic comments. (Dkt. 26, Moll Dep., March 9, 2022, pp. 158, 160).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

42. *The University has banned users, a decision assessed on a "case-by-case basis" but without any written guidance to determine its application. (Dkt. 25, Lucas Dep., March 11, 2022, pp. 121-122).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

43. *Defendant Moll cautioned fellow social media employees against banning users from a public entity's social media account since it could be a violation of the law. (Dkt. 26, Moll Dep., March 9, 2022, pp. 180-181). On April 8, 2020, Defendant Moll advised another employee on moderation decisions for comments critical of the University. He stated: "[y]eah those ones are tough, but you're right to leave it alone. If we hide comments like those, we'll surely be discovered accused [sic] of censorship." (Foley Decl. ¶ 15, p. 3, Exh. 14). On June 9, 2020, Defendant Moll advised Defendant Mike Klein and another employee in the Communications Department to "[t]ry not to ban [a user] if you can help it though. Really murky legal water with the Trump twitter account blocking people lawsuit ruling a year or two ago." (Foley Decl. ¶ 16, p. 3, Exh. 15).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

44. *The University has disabled commenting on posts, turning off the ability of any user to comment on five posts since January 1, 2020. (Foley Decl. ¶ 56, p. 9, Exh. 55, University Response to Int. No. 11). Three of the five occasions were due to comments it received regarding its animal research program. (Foley Decl. ¶ 56, p. 9, Exh. 55, University Response to Int. No. 11).*

Defendants' Response: As to the **first sentence, No dispute.** As to the **second sentence, dispute, in part.**  The evidence cited does not support the proposed finding and it therefore should be disregarded by the Court. Three of the five occasions were due in part or in whole to spam campaigns related to the University's animal research program. Out of those three occasions, comments were disabled on two of those occasions in part because the comments received portrayed COVID-19 misinformation. (Dkt. 38 (Foley Decl. ¶ 56, Ex. 55, University Response to Int. No. 11.)

Plaintiff's Reply: **No genuine dispute.** The Court should deem this proposed finding undisputed. The fact as written is adequately supported by the evidence cited. Defendants admit three of five occasions in which it disabled commenting on its Instagram account were prompted by comments "related to the University's research program." Defendants' objection that "[o]ut of those three occasions, comments were disabled on two of those occasions in part because the comments received portrayed COVID-19 misinformation" does not contradict Plaintiff's proposed finding.

45. *Defendant Moll described disabling commenting on one occasion for an April 22, 2020, post related to Earth Day due to animal-research type comments despite admitting they could have been considered on-topic to the post. He did so because he "did not have the mental capacity to just handle those types of comments." (Dkt. 26, Moll Dep., March 9, 2022, pp. 226-228).*

Defendants' Response: As to the **first sentence, No dispute.** As to **second sentence, dispute, in part**. The evidence cited does not support the proposed finding and it therefore should be disregarded by the Court.  Moll disabled comments on this occasion because there were "threatening comments" and "comments . . . wishing harm upon researchers or . . . people at the university," and during the "stressful time" ("early into the COVID-10 pandemic") he "didn't have the mental capacity to just handle those types of comments." (Dkt. 26 (Moll Dep. 228:1–22, March 9, 2022.)

Plaintiff's Reply: **No genuine dispute.** The Court should deem this proposed finding undisputed. The fact as written is adequately supported by the evidence cited. Defendants' cited testimony does not contradict Plaintiff's proposed finding.

46. *In the past, the University has chosen to respond to comments critical of the University that were made on posts it determined were unrelated to the comment's topic. (Dkt. 26, Moll Dep., March 9, 2022, pp. 100, 103).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

47. *The decision to hide a comment or respond to it is within the discretion of Defendants Nate Moll, Mike Klein, and John Lucas. (Dkt. 26, Moll Dep., March 9, 2022, p. 103).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

48. *Some factors Defendant Moll identified that go into whether to respond to a comment rather than hide it are the time of day the comment was read, the "circumstance in which . . . we saw the comment, and whether or not a subject matter expert was available to answer questions about it." (Dkt. 26, Moll Dep., March 9, 2022, pp. 152-153).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

49. *Aside from commenting in the comment threads of the University's posts, users of Facebook and Instagram can send direct messages to the University. (Dkt. 26, Moll Dep., March 9, 2022, pp. 18-19).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

50. *Defendant Moll monitors the University's Facebook and Instagram accounts for direct messages throughout the day. (Dkt. 26, Moll Dep., March 9, 2022, pp. 77-78). He reviews comments the first few minutes of the day, again at 4:00 or 5:00 pm, and might check them in the evening. (Dkt. 26, Moll Dep., March 9, 2022, pp. 78-79).*

Defendants' Response: **Dispute, in part**. The evidence cited does not support the proposed finding in full context. Moll's testimony shows that he was describing tasks done in a "typical" day, not every day. (Dkt. 26 (Moll Dep. 77:7–8, March 9, 2022).)

Plaintiff's Reply: **No genuine dispute**. The Court should deem this proposed finding undisputed. The fact as written is adequately supported by the evidence cited. The proposed finding does not state Defendant Moll performs the cited tasks "every day." Defendants' cited testimony does not contradict Plaintiff's proposed finding and is immaterial.

51. *There are no audits or compliance reviews of how the University's social media guidelines are applied or enforced. (Dkt. 25, Lucas Dep., March 11, 2022, p. 75); (Dkt. 28, University Dep., March 15, 2022, pp. 49-50).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

52. *On February 11, 2021, after this lawsuit was filed, Defendant Klein stated the lawsuit "will probably result in us changing and maybe being more specific about our comment moderation, which is probably good." (Foley Decl. ¶ 17, p. 3, Exh. 16).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

**University Treatment of Animal Testing Content**

53. *The University's position is that it ought to support its animal program. (Dkt. 28, University Dep., March 15, 2022, p. 132).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

54. *The University pays specific attention to anti-animal research comments when it deems them off-topic, and to animal research campaigns. (Dkt. 25, Lucas Dep., March 11, 2022, pp. 127-128).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

55. *The University's Communications team monitor "anti-animal research comments" as a part of their daily social media plan in anticipation of moderating comments that may appear on their social media pages advocating against animal testing. (Foley Decl. ¶ 18, p. 3, Exh. 17); see also (Foley Decl. ¶¶ 19-20, p. 4, Exh. 18-19).*

Defendants' Response: **Dispute.** The evidence cited does not support the proposed finding and it therefore should be disregarded by the Court.  The exhibits show only the social media plan on a few occasions, two of which were in response to multiple PETA comments, and do not represent a "daily social media plan." (Dkt. 38 (Foley Decl. ¶ 18, Ex. 17); see also 38 (Foley Decl. ¶¶ 19–20, Ex. 18–19).)

Plaintiff's Reply: **No genuine dispute.** The Court should deem the proposed finding of fact undisputed. The proposed finding is adequately supported by the cited evidence. The cited exhibits display social media plans that reflect a particular day's plan for the University's social media managing staff. *See* (Dkt. 26, Moll Dep., March 9, 2022, pp. 165-66). Defendant John Lucas testified the University pays attention to anti-animal research comments in explaining why a social media plan on a particular day includes the directive to "monitor" "anti-animal research comments." (Dkt. 25, Lucas Dep., March 11, 2022, pp. 127-28). Apart from the word "daily," Defendants do not dispute the underlying facts. Defendants also provide no evidence to support their dispute.

56. *Defendant Lucas subscribes to People for the Ethical Treatment of Animals' (PETA) Twitter account, for instance, to monitor its activities in case they relate to the University's animal testing program. (Dkt. 25, Lucas Dep., March 11, 2022, pp. 143-144).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

57. *Defendant Lucas alerts members of the Communications team, such as Defendant Moll, to PETA's social media posts so that any comments the University may receive on its social media accounts will be reviewed. (Dkt. 25, Lucas Dep., March 11, 2022, pp. 144-145); (Foley Decl. ¶ 21, p. 4, Exh. 20).*

Defendants' Response: **Dispute**. The evidence cited does not support the proposed finding and it therefore should be disregarded by the Court. Lucas alerts members of the Communications team to PETA's social media posts if he believes that PETA may be talking about the University, its animal research or labs. (Dkt. 25 (Lucas Dep. 143:14–44:23, March 11, 2022).)

Plaintiff's Reply: **No genuine dispute.** The Court should deem the proposed finding of fact undisputed. The proposed finding is adequately supported by the cited evidence. Defendant Lucas testified he was monitoring PETA's publicly-available Twitter feed and alerts the University's Communications team since they should be alerted to potential comments on social media. (Dkt. 25, Lucas Dep., March 11, 2022, pp. 144-145). Defendant Lucas testified

to another example where he alerts others at the University when PETA is "sharing information about UW Madison or something relevant to UW Madison research" so incoming content on the University's social media pages may be "[r]eviewed for accuracy." (Dkt. 25, Lucas Dep., March 11, 2022, pp. 144-145). There is no discussion in the referenced testimony of Defendant Lucas alerting the Communications team "if he believes that PETA may be talking about the University."

58. *When publicity related to animal testing, such as criticism of animal testing, occurs, the University apprises the Research Communications staff. (Dkt. 25, Lucas Dep., March 11, 2022, p. 29).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

59. *When "an animal-related account will be running a campaign," such as PETA, Defendant Moll notifies several employees in charge of the University's research communications. (Dkt. 26, Moll Dep., March 9, 2022, pp. 185-186).*

Defendants' Response: **Dispute, in part**. The evidence cited does not support the proposed finding and it therefore should be disregarded by the Court. Moll does not notify "several" employees; he only refers to two employees in the cited deposition transcript cited. (Dkt. 26 (Moll Dep. 185:16–25, March 9, 2022).)

Plaintiff's Reply: **No genuine dispute.** The Court should deem the proposed finding of fact undisputed. The proposed finding of fact is supported by Plaintiff's cited testimony in which the deponent discusses notifying "other social media managers" when "an animal-related account will be running a campaign," including two employees of the research communications department. (Dkt. 26, Moll Dep., March 9, 2022, pp. 185). Apart from the word "multiple," Defendants do not dispute the underlying facts. Also, Defendants' dispute is immaterial.

60. *Research Communications are employees within the Communications Department who cover communications that involve animal research. (Dkt. 25, Lucas Dep., March 11, 2022, p. 21).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

61. *Employees of the Research Communications team similarly monitor "campaigns" related to the University's research on other users' own social media accounts. (Dkt. 27, Tyrell Dep., April 5, 2022, pp. 52-53).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

62. *Research Communications employees have been asked to opine about moderation decisions. (Dkt. 27, Tyrell Dep., April 5, 2022, pp. 42, 45-46).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

63. *As a part of his job duties as a Social Media Manager, Defendant Moll monitors how people are "talking about the university." (Dkt. 26, Moll Dep., March 9, 2022, pp. 183-184). Defendant Moll believes his position as Social Media Manager is one of the "essential parts of the university's reputation so far as" he is "the main representative for the university, and the main institutional accounts on social media." (Dkt. 26, Moll Dep., March 9, 2022, p. 187).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

64. *Defendant Moll monitors the University's Instagram account for "animal rights" and "animal research comments" that he believes are "almost always off topic" to the post the users are commenting on. (Dkt. 26, Moll Dep., March 9, 2022, pp. 165-166, 171). The comments are typically "something like, stop animal testing, or shut down your lab," among what he describes as other colorful language. (Dkt. 26, Moll Dep., March 9, 2022, p. 168). A comment advocating for cruelty in animal research would not be considered an animal research comment in Defendant Moll's opinion. (Dkt. 26, Moll Dep., March 9, 2022, pp. 168-169).*

Defendants' Response: As to the first sentence, **dispute**. The evidence cited does not support the proposed finding. The deposition transcript shows that Moll testified, in the context of a conversation about "50-plus PETA comments on [the University's] Instagram posts," that waves of comments, which he explained represent a "spam campaign," coming in on a post are "almost always off topic" to the post the users are commenting on. (Dkt.

26 (Moll Dep. 166:6–19, March 9, 2022).) Moll testified "a spam comment is not always an antianimal research comment. I want to make that clear." (Dkt. 26 (Moll Dep. 168:5–7, March 9, 2022).) As to the second sentence, **No dispute.** As to the third sentence, **dispute**. The evidence cited does not support the proposed finding and it therefore should be disregarded by the Court. The deposition transcript shows that Moll was asked whether a comment advocating for cruelty in animal research would be an "antianimal research comment . . . or other". (Dkt. 28 (Moll Dep. 168:24–25, March 9, 2022).) Moll testified "I guess that would be different . . . I don't think we ever received a comment like that before . . . But . . . we're dealing with negatives . . . here. It's hard to interpret." (Dkt. 28 (Moll Dep. 168:24–25, March 9, 2022).)

Plaintiff's Reply: **No genuine dispute**. The Court should deem the proposed finding of fact undisputed. As to the first sentence, the cited evidence supports the proposed finding of fact. Defendants' cited testimony merely establishes Defendant Moll believes animal research comments can be classified as "spam." Defendants' cited testimony does not contradict that Defendant Moll monitors "antianimal [sic] research comments," rather they only use his description of such comments as "spam campaigns." Defendant Moll testified PETA's comments on the University's Instagram posts would be considered "spam campaigns" that are "almost always off topic to the . . . post," so "its just monitoring the situation and seeing where potentially . . . this campaign is coming from." (Dkt. 26, Moll Dep., March 9, 2022, p. 166). Defendant Moll has testified that he believes the "majority of the spam-style campaigns that we receive are related to animal testing." (Dkt. 26, Moll Dep., March 9, 2022, p. 204). As to the third sentence, Defendants' cited testimony does not contradict the proposed finding.

65. *Defendant Moll has even invited others with access to the University's Facebook moderation settings to "hide/delete any comments relating to monkey research, shutting down the WNPRC (Wisconsin National Primate Research Center), 'you guys are monsters, stop the vivisection,' etc. etc." (Foley Decl. ¶ 22, p. 4, Exh. 21).*

Defendants' Response: **Dispute**. The evidence cited does not support the proposed finding in context and it therefore should be disregarded by the Court. Moll has invited others to do so during "a massive blast campaign from PETA . . . ." (Dkt. 38 (Foley Decl. ¶ 22, Ex. 21).)

Plaintiff's Reply: **No genuine dispute**. The Court should deem the proposed finding of fact undisputed. The proposed finding is adequately supported by the cited evidence. Defendants do not dispute the underlying facts and their interpretation of the cited evidence does not contradict the proposed finding.

66. *Defendant Lucas, in turn, wants to promote the animal program. (Dkt. 25, Lucas Dep., March 11, 2022, p. 33). He believes the Communications department has "continuing responsibilities to the UW-Madison research community, and specifically those affiliated with the animal program." (Dkt. 25, Lucas Dep., March 11, 2022, p. 33).*

Defendants' Response: **Dispute, in part**. The evidence cited does not support the proposed finding and it therefore should be disregarded by the Court. Lucas testified in response to a question concerning his desire to be notified of incoming media related this this lawsuit. (Dkt. 25 (Lucas Dep. 32:16–33:1, March 11, 2022).)

Plaintiff's Reply: **No genuine dispute**. The Court should deem the proposed finding of fact undisputed. The proposed finding is adequately supported by the cited evidence. Defendants do not dispute the underlying facts and their interpretation of the cited evidence does not contradict the proposed finding. Further, Defendant Lucas testified "I would say that it's our goal *to always* ensure that discussion about the animal program is truthful and accurate." (Dkt. 25, Lucas Dep., March 11, 2022, p. 34) (emphasis added).

67. *Defendant Lucas is personally pro animal testing and supportive of the animal program because he understands "the information that we share to the public as being accurate and true." (Dkt. 25, Lucas Dep., March 11, 2022, p. 42).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

### The University's use of keyword filters

68. *The University uses keyword filters to hide comments containing certain words or phrases using the keyword filters available through Facebook and Instagram. Keyword filters allow the University to add a word or phrase to a list within Facebook or Instagram such that when a commentor uses that word or phrase in their comment, the comment will automatically be hidden. (Dkt. 26, Moll Dep., March 9, 2022, p. 29).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

69. *As of April 21, 2022, the University included the following keywords to automatically hide comments on its @uwmadison Instagram and Facebook pages:*

| **Facebook** | **Instagram** |
| --- | --- |
| Animal laboratories | #freebabycocoa |
| Animal testing | #releasecornelius |
| Barbaric | @peta |
| Cruelty | Abusing |
| Experimenting on | Animal testing |
| Macaques | Cornelius |
| Monkeys | Cruelty |
| Primate | Kill animals |
| Primates | Lab |
| Research animals | Monsters |
| Testing on animals | Monstros |
| Torture | Shame on |
| Torturing | Testing cats |
| Vivisection | Testing on animals |
| wnrpc | Testing on cats |
| | Tests on cats |
| | Torture |
| | Torturing |
| | Vivisection |

| | WNPRC |
| --- | --- |
| | You guys are sick |

*(Foley Decl. ¶ 23, p. 4, Exh. 22); (Dkt. 17, First Amended Compl. ¶ 101, p. 32; Dkt. 19, Answer to FAC ¶ 101, p. 17).*

Defendants' Response: **Dispute, in part.** The evidence cited does not support the April 21, 2022, date listed in the proposed finding. (Foley Decl. ¶ 23, Ex. 22); (Dkt. 17 (First Amended Compl.) ¶ 101; (Dkt. 19 (Answer to FAC) ¶ 101).)

Plaintiff's Reply: **No genuine dispute.** The Court should deem the proposed finding of fact undisputed. Defendants have not cited evidentiary materials contradicting Plaintiff's proposed finding of fact that the above keyword filter list reflected its content as of April 21, 2022. The date given reflects the keyword filter list at the time the proposed finding was drafted, given the lack of supplemental productions altering the lists' content by Defendants. On June 8, 2022, weeks after Plaintiff filed her motion for summary judgment, Defendants supplemented their response to Interrogatory No. 9, testifying that sometime in the previous two months, the University added and then removed the following words or phrases: "#noexperimentarconanimales," "Aesinos," "De los animals," and "No más experimentos.". (Supplemental Foley Decl., filed June 21, 2022, ¶ 2, p. 1, Exh. 1). Defendants further supplemented discovery relating to the keyword filter lists' content, producing a screenshot of the keyword filter as of June 6, 2022, Exhibit 2. (Supplemental Foley Decl., filed June 21, 2022, ¶ 3, p. 1, Exh. 2).

Defendants' supplemental discovery reveals that as of June 6, 2022, the following words were added to the University's keyword filter list for its Instagram account: "PETA," and "bullshit." Defendants' supplemental discovery also reveals that as of June 6, 2022, the following words were removed from the University's keyword filter list for its Instagram account: "#freebabycocoa," "#releasecornelius," and "lab." As Defendants' supplemental

production reflects the keyword filter list as of June 6, 2022, it does not contradict the content

of the keyword filter lists on April 21, 2022, as referenced in the proposed finding.

70. *In addition to anti-animal testing related speech, the University's Facebook page's keyword filters hide other comments, including those containing messaging to "support the police," "support the blue," "support law enforcement," "all lives matter," "thin blue line," and "blue lives matter." (Foley Decl. ¶ 23, p. 4, Exh. 22).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

71. *In addition to anti-animal testing related speech, the University's Instagram keyword filter only hides seven other words or phrases: three obscenities, "rot in hell," "killers," and the words "biden" and "trump." (Foley Decl. ¶ 23, p. 4, Exh. 22).*

Defendants' Response: **Dispute.** As explained in response to proposed finding of fact no. 69, the Instagram keyword filter list does not provide a date, so it cannot be determined if the filter currently "hides" seven other words or phrases.

Plaintiff's Reply: **No genuine dispute.** The Court should deem the proposed finding of fact

undisputed. At the time of filing Plaintiff's motion for summary judgment on May 18, 2022,

Defendants had not supplemented discovery regarding the content included on the University's

Instagram account's keyword filter list. *See* Plaintiff's Reply to PPFOF ¶ 69, *supra*. Defendants

do not cite evidentiary materials contradicting that on May 18, 2022, the University's

Instagram account's keyword filter list "hid[]" seven other words or phrases.

72. *The University occasionally adds words to the keyword filter in response to "spam campaigns," or the receipt of multiple comments on a University post in order to automatically hide comments containing that word or phrase. (Dkt. 26, Moll Dep., March 9, 2022, pp. 70-71, 199-200).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

73. *For instance, Defendant Moll added the word "Cornelias," a misspelling of the name of one of the primates involved with research at the University, to the keyword filter for the University's Instagram account after receiving comments relating to him on a post*

*containing a commencement video. (Dkt. 26, Moll Dep., March 9, 2022, p. 216). Defendant Moll did so without doing much research into the campaign involving "Cornelias" itself. (Dkt. 26, Moll Dep., March 9, 2022, pp. 223-224).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

74. *The University, in contrast, would not add a word or phrase to an automoderated list for topics the University itself posts about on its Instagram and Facebook accounts. (Dkt. 26, Moll Dep., March 9, 2022, p. 212).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

75. *Defendant Moll believes the vast majority of "spam-style campaigns" are "related to animal testing," and thus require the use of the automoderator to filter out words related to animals and animal research. (Dkt. 26, Moll Dep., March 9, 2022, pp. 203-204).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

76. *The process of adding or removing words from the keyword filters is situation dependent, and words and phrases are reviewed for potential removal on an as-needed basis. (Dkt. 26, Moll Dep., March 9, 2022, pp. 71-72).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

77. *There is no formal practice for removing words from the keyword filters. Words can be removed from the keyword filters, for instance, because the University decides to create content that would be relevant to a word or phrase listed within the filter. (Dkt. 28, University Dep., March 15, 2022, pp. 113-114).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

78. *Words or phrases restricted by the keyword filters on the University's Facebook and Instagram accounts are hidden from public view unless a University employee unhides them, though comments hidden through automoderation on Facebook are visible to the*

*commenters' Facebook friends. (University Response to RFA No. 6); (Dkt. 26, Moll Dep., March 9, 2022, pp. 29-30); see also (Krasno Decl., ¶ 20, p. 5).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

79. *The University does not do anything to review automatically moderated comments that contain a word from the keyword filter in order to make them visible if they were wrongfully filtered. (Dkt. 28, University Dep., March 15, 2022, pp. 111, 115).*

Defendants' Response: **Dispute.**  The evidence cited does not support the proposed finding and it therefore should be disregarded by the Court. The testimony is that, in Facebook, "[I]f it's noticed, then . . . if it is on topic, or you know, doesn't violate any of the other criteria listed in the social media statement but it is still hidden, the person reviewing the comment has the ability to unhide it."  (Dkt. 28 (University Dep. 115:4–15, March 15, 2022).)

Plaintiff's Reply: **No genuine dispute.** The Court should deem the proposed finding of fact as undisputed. The cited evidence supports the proposed finding of fact. The cited testimony shows the question: "Does the University do anything to – to review automatically moderated comments that contained a keyword filter in order to -- in order to make those comments visible if it's -- if they were wrongfully filtered?" In direct response, the University testified: "No, it does not." Defendants' cited testimony merely establishes that a comment may be unhidden if an employee happens to notice it, and merely "has the ability" to unhide it. There is no process directing employees to do so. Defendants' cited testimony does not contradict that the University does not have any process of review for comments improperly moderated by its keyword filters.

80. *The Facebook keyword filters capture comments related to animal testing made to posts but not other comments unrelated to the post that do not concern animal testing. For example, a University Facebook post related to modeling social distancing impacts on COVID-19 incidents automatically hid several comments related to animal testing that contained the words "monkeys" and "experimenting on," while leaving a comment by user "Hani Hosain" that asked: "Do you have experience certificates equivalencies with a*

*university degree?" (Foley Decl. ¶ 24, p. 4, Exh. 23); (Dkt. 25, Lucas Dep., March 11, 2022, pp. 107-108).*

Defendants' Response: **Dispute.** The evidence cited does not support the proposed finding and it therefore should be disregarded by the Court. The cited exhibit, which captures comments on the University Facebook post related to modeling social distancing impacts on COVID-19, shows six comments that were moderated, either with a keyword filter or manually. (Foley Decl. ¶ 58, Ex. 57, University Amended Response to Int. No. 3 ("On Facebook . . . A yellow or red box shows a comment that was moderated, either manually or via an auto-moderation process.").)

Plaintiff's Reply: **No genuine dispute.** The Court should deem the proposed finding of fact undisputed. The cited evidence supports the proposed finding of fact. The comment by user "Hani Hosain" remains visible while four comments related to animal testing are shown hidden. *See* (Dkt. 38-23, Foley Decl., filed May 18, 2022, ¶ 24, p. 4, Exh. 23). Defendants' cited evidence does not contradict the proposed finding and is immaterial.

81. *A comment on the University's Facebook page made by user "Warren Knapp" on a post relating to new technologies used to determine when pneumonia is caused by COVID-19 was similarly hidden from view. The comment, which asked: "Did you figure that out by using abused monkeys?" contained the word "monkeys" which is on the University's keyword filter list. (Foley Decl. ¶ 25, p. 4, Exh. 24).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

### THE UNIVERSITY'S CENSORSHIP OF MS. KRASNO

82. *In September 2020, before posting on the University's Instagram account or Facebook page, Ms. Krasno had already begun speaking publicly about her experience working in the University's primate testing program by posting about her experience on her own Instagram account. On September 17, 2020, for the first time, Ms. Krasno tagged the University's Instagram account in her own Instagram posts that criticized the University's animal testing. (Dkt. 25, Lucas Dep., March 11, 2022, pp. 82-83); (Krasno Decl. ¶¶ 8, 10, p. 2).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

83. *Defendant Lucas described Ms. Krasno's tagging as concerning as he believed they were "off-topic comments and they were surfacing in front of a wide number of users." (Dkt. 25, Lucas Dep., March 11, 2022, pp. 82-83).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

84. *On September 16, 2020, the former Director of the Harlow Primate Laboratory emailed a member of the University's Research Communications team concerning posts Ms. Krasno made on Ms. Krasno's own Instagram account regarding the University's primate testing. (Dkt. 27, Tyrell Dep., April 5, 2020, pp. 48-50); (Foley Decl. ¶ 26, p. 5, Exh. 25).*

Defendants' Response: **Dispute.** The evidence cited does not support the proposed finding and it therefore should be disregarded by the Court. The evidence cited does not refer to any "posts Ms. Krasno made on [her] own Instagram account." (Dkt. 27 (Tyrell Dep. 48–50, April 5, 2020); (Foley Decl. ¶ 26, Ex. 25).)

Plaintiff's Reply: **No genuine dispute.** The Court should deem the proposed finding of fact to be undisputed. Plaintiff agrees the referenced exhibit does not refer to posts made on Krasno's "Instagram account." Immaterial, as the referenced exhibit refers to "social media posts" and "the chatter online," **as well as "public comments" by Krasno about the "ethics of keeping animals in captivity."** (Dkt. 38-25, Foley Decl., filed May 18, 2022, ¶ 26, p. 5, Exh. 25). The Defendants do not dispute the remaining underlying facts of the proposed finding, such as the fact that on September 16, 2020, the former Director of the Harlow Primate Laboratory emailed a member of the University's Research Communications team concerning Ms. Krasno's "public comments."

85. *On September 17, 2020, the University removed "tags" Ms. Krasno had made of the University's official Instagram account on her Instagram posts, thus removing the posts from the "Tagged" section of the University's Instagram account. Ms. Krasno was not able to re-tag the University. (Foley Decl. ¶ 57, p. 9, Exh. 56, Krasno Response to Int. No. 1); see also (Krasno Decl. ¶ 11, p. 2).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

86. *Ms. Krasno realized that the University was un-tagging itself in her posts in mid-September 2020. She understood that an Instagram user can un-tag him or herself when another user tags them in a post, so she would periodically check the University's "Tagged" section of its Instagram page to see if her tagged posts were visible. She immediately noticed that none of her posts tagging the University were there. She would then try and re-tag the University but was unable to do so. (Krasno Decl. ¶ 11, p. 2).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

87. *On September 18, 2020, Ms. Krasno commented on a University Instagram post about dairy cows at the University's Dairy Cattle Center. Ms. Krasno commented: "stop exploiting animals. Get with the future and the future is consistent anti-oppression. Shut down the labs and eat plants!" Within the same post, Ms. Krasno replied to another individual's comment about stopping animal experimentation and said, "I used to work in one of their labs. I made a bunch of posts and tagged them in it and they hid all of them." (Krasno Decl. ¶ 12, pp. 2-3); (Foley Decl. ¶ 27, p. 5, Exh. 26). Ms. Krasno's comment and reply were hidden from public view. (Krasno Decl. ¶ 12, p. 3). A copy of Ms. Krasno's comment and reply is attached hereto as Exhibit 26. (Foley Decl. ¶ 27, p. 5.). The same post displays a comment by user "rollietimothy" stating "Hopefully I will be admitted next year, fingers crossed!" That comment remains visible. A copy of the post with all comments viewable by users is also attached hereto as Exhibit 27. (Foley Decl. ¶ 28, p. 5.)*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

88. *On September 28, 2020, Ms. Krasno commented a second time on a University Instagram post about the opening of a recreation center. She commented: "Thanks for continuing to delete my comments and untag yourself from my photos. Definitely showcases fear. I will continue to share the truth about what it was like working in one of your primate research labs and advocate for their closure. As I mentioned before, today is a great day to shut down the primate research labs!" At the time of her posting, 179 other comments had been made to the same post. Ms. Krasno's comment was hidden from public view. (Krasno Decl. ¶ 14, p. 3). A copy of Ms. Krasno's comment and showing 179 comments to the post is attached hereto as Exhibit 28. (Foley Decl. ¶ 29, p. 5). A copy of the post with all comments viewable by users is also attached hereto as Exhibit 29. (Foley Decl. ¶ 30, p. 5).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

89. *At the end of September 2020, the University restricted Ms. Krasno's Instagram account so that all her comments on its @uwmadison Instagram account were automatically hidden from public view. (Foley Decl. ¶ 58, p. 9, Exh. 57, University Amended Response to Int. No. 3); (Dkt. 17, First Amended Compl. ¶¶ 77, 80, pp. 24, 27); (Dkt. 19, Answer to FAC ¶¶ 77, 80, pp. 13-14); (Dkt. 26, Moll Dep., March 9, 2022, p. 175); see also (Krasno Decl. ¶ 15, p. 3).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

90. *Though other users' comments have been subject to manual or automatic moderation on its Instagram account, the University could not identify imposing an account restriction on any other Instagram users other than Ms. Krasno. (Foley Decl. ¶ 58, p. 9, Exh. 57, University Amended Response to Int. No. 3).*

Defendants' Response: **Dispute, in part.** The cited evidence shows that two other account restrictions were imposed. (Foley Decl. ¶ 58, Ex. 57, University Amended Response to Int. No. 3.)

Plaintiff's Reply: **No genuine dispute**. The Court should deem the proposed finding of fact undisputed. Defendants' cited evidence refers to two other account restrictions imposed on the University's *Facebook* account. Plaintiff's cited evidence and the University's testimony identifies solely Krasno as a restricted account/user on its Instagram account within the past two years. (Dkt. 38-57, Foley Decl. ¶ 58, filed May 18, 2022, p. 9, Exh. 57, University Amended Response to Int. No. 3).

91. *Defendant Moll personally restricted Ms. Krasno's account for the purported reason that he "noticed . . . a consistent pattern of off-topic comments." (Dkt. 26, Moll Dep., March 9, 2022, pp. 176, 195); (Dkt. 28, University Dep., March 15, 2022, pp. 63-64). However, he could not recall if every moderated comment of Ms. Krasno's fit into the off-topic comment criteria. (Dkt. 26, Moll Dep., March 9, 2022, p. 195).*

Defendants' Response:  **No dispute.**

Plaintiff's Reply: **No dispute.**

92. *On October 3, 2020, Ms. Krasno commented on a University Instagram post about the birthday of its mascot, Bucky. She commented: "close down the primate labs!*

*@uwmadison." (Krasno Decl. ¶ 16(a), p. 4); (Foley Decl. ¶ 57, p. 9, Exh. 56, Krasno Response to Int. No. 1). Ms. Krasno's comment was hidden from public view. See (Krasno Decl. ¶¶ 16-17, pp. 3-4). A copy of the post with all comments viewable by users is also attached hereto as Exhibit 30. (Foley Decl. ¶ 31, p. 5).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

93. *On October 29, 2020, Ms. Krasno commented on a University Instagram post about University efforts during the COVID-19 pandemic. She commented: "@uwmadison stop testing on monkeys!" Ms. Krasno's comment was hidden from public view. (Krasno Decl. ¶¶ 16(b), 17, p. 4); (Foley Decl. ¶ 57, p. 9, Exh. 56, Krasno Response to Int. No. 1). A copy of Ms. Krasno's comment is attached hereto as Exhibit 31. (Foley Decl. ¶ 32, p. 5). A copy of the post with all comments viewable by users is also attached hereto as Exhibit 32. (Foley Decl. ¶ 33, p. 6).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

94. *On November 17, 2020, Ms. Krasno commented on a University Instagram post about COVID-19 measures. She commented: "Close down the primate labs!! @uwmadison" Ms. Krasno's comment was hidden from public view. (Krasno Decl. ¶¶ 16(c), 17, p. 4). A copy of Ms. Krasno's comment is attached hereto as Exhibit 33. (Foley Decl. ¶ 34, p. 6). The same post displays a comment by user "lili_varela" that asks, "Please accept me :)." That comment remains visible. A copy of the post with all comments viewable by users is attached hereto as Exhibit 34. (Foley Decl. ¶ 35, p. 6).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

95. *On November 23, 2020, Ms. Krasno commented on a University Instagram post about Thanksgiving travel. She commented: "@uwmadison, close down your primate research labs!" Ms. Krasno's comment was hidden from public view and was not approved by the University to appear on the page. (Krasno Decl. ¶¶ 16(d), 17, p. 4); (Dkt. 26, Moll. Dep., March 9, 2022, p. 115). A copy of Ms. Krasno's comment is attached hereto as Exhibit 35. (Foley Decl. ¶ 36, p. 6). A copy of the post with all comments viewable by users is also attached hereto as Exhibit 36. (Foley Decl. ¶ 37, p. 6).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

96. *On December 22, 2020, Ms. Krasno commented on a University Instagram post about a dog being treated for cancer at the University's veterinary hospital. She commented: "It is really quite hypocritical the compassion shown to this dog while thousands of animals languish in laboratories at @uwmadison. I really wish you would acknowledge this and do something about it." (Krasno Decl. ¶ 16(e), p. 4). Ms. Krasno's comment was hidden from public view and was not manually approved for public visibility. (Dkt. 28, University Dep., March 15, 2022, pp. 65-66). A copy of Ms. Krasno's comment is attached hereto as Exhibit 37. (Foley Decl. ¶ 38, p. 6). A copy of the post with all comments viewable by users is also attached hereto as Exhibit 38. (Foley Decl. ¶ 39, p. 6).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

97. *The University admitted Ms. Krasno's December 22, 2020 comment was on-topic but remained hidden. (Dkt. 28, University Dep., March 15, 2022, pp. 73-74).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

98. *There is no indication that the University manually approved any of Ms. Krasno's comments for visibility during her account restriction. (Dkt. 28, University Dep., March 15, 2022, p. 62). Her comments made during the restriction remain hidden from any viewer to the page except Ms. Krasno and the University. (Dkt. 28, University Dep., March 15, 2022, p. 78).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

99. *Defendant Moll could not recall any complaints made about Ms. Krasno's interactions with the University's social media accounts. (Dkt. 26, Moll Dep., March 9, 2022, p. 177).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

100.     *Defendant Moll considers the content of Ms. Krasno's comments "critical." (Dkt. 26, Moll Dep., March 9, 2022, p. 196).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

101.     *Defendant Lucas believes the volume of Ms. Krasno's comments "prevented other users from engaging with the university or receiving information about our programs or services." (Dkt. 25, Lucas Dep., March 11, 2022, p. 84).*

Defendants' Response: **Dispute**. The evidence cited does not support the proposed finding and it therefore should be disregarded by the Court.   Lucas testified that the volume of off-topic comments from other users prevented and prevents other users from engaging with the University or receiving information about its programs or services. Krasno is one user who made several off-topic comments to the University's social media pages. (Dkt. 25 (Lucas Dep. 84:10–22, March 11, 2022.) Specifically, Lucas testified that he ". . . wouldn't restrict this opinion just to Ms. Krasno, but . . . there were a large number of off-topic . . . comments . . . and that the volume of those . . . prevented other users from engaging with the university or receiving information about [the University's] programs or services." This testimony shows that Lucas was referring to the volume of off-topic comments overall, which included Krasno's comments, not solely the volume of Krasno's comments.

Plaintiff's Reply: **No genuine dispute**. The Court should deem the proposed finding of fact

undisputed. Defendants' cited evidence does not contradict the proposed finding.

102.     *Other Instagram users have commented multiple times within the same comment thread on topics unrelated to the University's post. For instance, user "steve_go_wild" commented twice criticizing other comments within the thread and urging the University to remove them in a post relating to demonstrators honoring George Floyd. (Foley Decl. ¶ 40, p. 7, Exh. 39).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

103.     *During her restriction from the University's Instagram account, the University continued to monitor Ms. Krasno's activities on her own social media profile. On December 3, 2020, Kelly Tyrell, the Research Communications Director, forwarded Defendants Moll and Lucas information on an event Ms. Krasno was holding online about animal activist campaigns. (Foley Decl. ¶ 41, p. 7, Exh. 40); (Dkt. 26, Moll Dep., March 9, 2022, pp. 189-190). Ms. Tyrell was sent the message by Allyson Bennett, an employee involved in primate care. (Foley Decl. ¶ 42, p. 7, Exh. 41).*

Defendants' Response: **Dispute, in part.** The evidence cited does not support the proposed finding that the University monitored Krasno's activities on her own social media profile. The cited exhibit shows only an email. (Foley Decl. ¶ 41, Ex. 40); (Dkt. 26 (Moll Dep. 189–190, March 9, 2022.).

Plaintiff's Reply: **No genuine dispute.** The Court should deem the proposed finding of fact undisputed. Object to Defendants' dispute as to the first sentence as immaterial. Plaintiff agrees the cited evidence does not reference Krasno's "own social media profile," but it is undisputed the University monitored Krasno's social media profile. For instance, University employees shared screenshots of Krasno's "IG story," or Instagram story. *See, e.g.*, (Dkt. 38-42, Foley Decl., filed May 18, 2022, ¶ 43, p. 7, Exh. 42) (showing monitoring of Ms. Krasno's account). The cited evidence supports the remaining proposed finding of fact that the University continued to monitor Krasno's activities, and Defendants do not offer evidentiary materials to contradict the second or third sentences or its monitoring of her activities during her account restriction.

104.    *On October 6, 2021, several employees of the University's Communications Department, including Defendant Moll and Defendant Klein, discussed content Ms. Krasno had posted on her Instagram account relating to the University's testing. (Foley Decl. ¶ 54, p. 9, Exh. 53); see also (Foley Decl. ¶ 43, p. 7, Exh. 42) (showing monitoring of Ms. Krasno's account on April 8, 2021).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

105.    *On January 26, 2021, Defendant Klein alerted Defendant Moll that "our friend Maddie Krasno is giving a public presentation on what she saw while working in the UW animal lab." Defendant Moll responded, "She's been tagging us in pics and comments for months and raises hell every time I untag us. I sent her info to Chris" Barncard, an employee in the University's Research Communications department. Defendant Moll added, "Wonder if I can spoof one of my sleeper accounts to make it in." (Foley Decl. ¶ 44, p. 7, Exh. 43).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

106.    *Defendant Moll forwarded the posting to Chris Barncard. (Dkt. 26, Moll Dep., March 9, 2022, pp. 182-183); (Dkt. 25, Lucas Dep., March 11, 2022, pp. 26-27); (Foley*

*Decl. ¶ 45, p. 7, Exh. 44). He did so "since it involved the primate lab." (Dkt. 26, Moll Dep., March 9, 2022, p. 183).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

107.     *Defendant Moll removed the restriction on Ms. Krasno's account in late January 2021 as a part of "an inbox cleanse" in which he determined Ms. Krasno's restricted comments were no longer violating the University's social media practices. (Dkt. 26, Moll Dep., March 9, 2022, pp. 178-179).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

108.     *Following the removal of her account restriction, Ms. Krasno is still subject to automatic moderation under the University's keyword filters. (Dkt. 28, University Dep., March 15, 2022, pp. 62-63).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

109.     *On March 11, 2022, Ms. Krasno commented on a University Instagram post regarding having a safe and happy spring break. She commented: "I bet the monkeys and other sentient beings in your labs would like a break or better yet, freedom @UWMadison." Another user, "seth_genteman," replied to Ms. Krasno's comment in support of animal research stating, "animals may end up saving your life from the research conducted." From there, Ms. Krasno and "seth_genteman" engaged in a series of replies within the comment thread in which "seth_genteman" remarked, "[e]veryone would love an easier way to obtain said results," to which Ms. Krasno issued a final reply that referenced her time in the University's "primate lab." (Foley Decl. ¶ 46, p. 7, Exh. 45); (Krasno Decl. ¶ 25, p. 6). Ms. Krasno's final reply to "seth_genteman" contained the word "lab" which is on the University's Instagram keyword filter list. Ms. Krasno's reply was hidden from view, while "seth_genteman's" comments advocating for animal testing remain visible. (Foley Decl. ¶ 47, p. 8, Exh. 46); (Dkt. 28, University Dep., March 15, 2022, pp. 93-105, 141); (Krasno Decl. ¶ 25, p. 6).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

110.     On December 9, 2020, Ms. Krasno commented on a University Facebook post about proud alumni. She commented: "University of Wisconsin-Madison, are you really proud of all of your graduates or just the ones who didn't object to your barbaric treatment of monkeys in your research labs?" Ms. Krasno's comment was manually hidden from public view for being "off topic." (Foley Decl. ¶ 58, p. 9, Exh. 57, University Amended Response to Int. No. 3); (see Krasno Decl. ¶ 19, pp. 4-5). Only Ms. Krasno and her Facebook friends could view the comment. (Krasno Decl. ¶ 19, pp. 4-5). A copy of Ms. Krasno's comment is attached hereto as Exhibit 47. (Foley Decl. p. 48, ¶ 8). A copy of the post with all comments viewable by users is also attached hereto as Exhibit 48. (Foley Decl. ¶ 49, p. 8).

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

111.     On December 13, 2020, Ms. Krasno commented on a University Facebook post about winter commencement and the future. She commented: "I wish you would think about the future in new ways too and stop testing on monkeys. Working in one of those labs during college showed me how important it is that we create a just world. Animal research is not the way to accomplish this." (Krasno Decl. ¶ 20, p. 5); (Foley Decl. ¶ 57, p. 9, Exh. 56, Krasno Response to Int. No. 1). The comment includes the word "monkeys" which is on the University's Facebook keyword filter list. (Foley Decl. ¶ 23, p. 4, Exh. 22). Ms. Krasno's comment was hidden from public view, and only Ms. Krasno and her Facebook friends can view the comment. (Krasno Decl. ¶ 20, p. 5). A copy of Ms. Krasno's comment is attached hereto as Exhibit 49. (Foley Decl. ¶ 50, p. 8). A copy of the post with all comments viewable by users is also attached hereto as Exhibit 50. (Foley Decl. ¶ 51, p. 8).

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

112.     As a result of the limitation, no members of the public aside from Ms. Krasno's Facebook friends can view Ms. Krasno's comments, nor can they reply to her comments or view the University's response, if any, to her comments. (Dkt. 17, First Amended Compl. ¶ 100, p. 32; Dkt. 19, Answer to FAC ¶ 100, p. 17).

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

113.     No prior warnings were given to Ms. Krasno prior to the moderation of her comments on the University's Instagram and Facebook posts. (Foley Decl. ¶ 55, p. 9, Exh. 54, University Response to Int. No. 3).

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

114.     *Ms. Krasno became aware that the University was hiding her comments because she noticed that the public would not "like" or respond to her comments. This was especially noticeable when she would engage in conversation with others by responding to them and tagging them in her response, but would never receive any response. Ms. Krasno then would screen shot her comments and send them to her friends to see if they could see her comments or replies. Ms. Krasno's friends informed her that they were unable to see her comments on the University's Instagram posts even though she was able to view them from her own profile. (Krasno Decl. ¶ 13, p. 3).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

115.     *In the spring of 2021, Ms. Krasno learned through public records requests the University responded to, and which were given to her by a friend, that the University maintains a list of keywords that are blocked on the University's Instagram and Facebook pages. (Krasno Decl. ¶ 21, p. 5).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

116.     *After learning about the University's keyword filter lists, to try and avoid them, Ms. Krasno advocated for animal rights by modifying the spelling and spacing of certain words in comments she made on the University's Instagram and Facebook posts. (Krasno Decl. ¶ 22, p. 5).For example, on May 9, 2021, Ms. Krasno commented on an Instagram post discussing Mother's Day, "What about all the mothers you have in cages on campus? Celebrating them too after ripping their babies away from them? A n l m a l t e s t l n g is cruel." The comment remains visible on the post. (Krasno Decl. ¶ 22, p. 5); (Foley Decl. p. 52, ¶ 8, Exh. 51).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

117.     *Similarly, Ms. Krasno commented on a University Facebook post issued March 24, 2022, announcing a "Cool Science Image contest." She commented: "Considering much of the 'science' done at the university is research without consent AKA t e s t l n g o\*n a n l m a l s, let's see some footage the a l n m a l s in your l a b s. After all, y'all are all about*

*transparency right?" (Krasno Decl. ¶ 23, p. 6). The comment remains visible on the post. On the same post, another user commented: "Can Alumni enter?" to which the University responded with its own comment. (Foley Decl. ¶ 53, p. 8, Exh. 52).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

118.    *Ms. Krasno finds this process burdensome as she must try to remember what words are currently listed on the University's keyword filters in formulating her messages. She also cannot use plain language to convey her views to other readers, which she believes dilutes the effectiveness of her messaging. (Krasno Decl. ¶ 24, p. 6).*

Defendants' Response: **No dispute.**

Plaintiff's Reply: **No dispute.**

s

DATED this 21st day of June, 2022.

/s/ *Caitlin M. Foley*

Caitlin M. Foley
ANIMAL LEGAL DEFENSE FUND
150 South Wacker Drive, Suite 2400
Chicago, IL 60606
Tel: (707) 795-2533 ext. 1043
Fac: (707) 795-7280
Email: cfoley@aldf.org

Christopher A. Berry
ANIMAL LEGAL DEFENSE FUND
525 E. Cotati Ave.
Cotati, CA 94931
Tel: (707) 795-2533 ext. 1041
Fax: (707) 795-7280
Email: cberry@aldf.org

Joseph S. Goode
Mark M. Leitner
Jessica L. Farley
LAFFEY, LEITNER & GOODE
325 E. Chicago Street
Suite 200
Milwaukee, WI 53202
(414) 312-7003
(414) 755-7089 (facsimile)
jgoode@llgmke.com
mleitner@llgmke.com
jfarley@llgmke.com